IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEEL CORPORATION OF THE PHILLIPINES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | )   Civil Action No.  06-386 |
| | ) |
| INTERNATIONAL STEEL SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
# and
# ORDER OF COURT

## SYNOPSIS

Plaintiff, Steel Corporation of the Philippines ("SCP"), has brought the instant action seeking an order from this Court confirming a foreign arbitral award arising out of an arbitration proceeding conducted before the International Chamber of Commerce, International Court of Arbitration.  (Docket No. 11).  Defendant, International Steel Services, Inc. ("ISSI"), has filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c).  (Docket No. 14).  Plaintiff, SCP, has filed a Response and Memorandum in Opposition (Docket Nos. 19 and 20).  After careful consideration of the submissions of the parties and for the reasons set forth below, said Motion (Docket No. 14) is denied.

**OPINION**

**I. BACKGROUND**

The facts of this case are largely undisputed. SCP is a producer and wholesaler of steel products in the Philippines. ISSI is in the business of designing and constructing acid regeneration plants, which regenerate and recycle pickle liquor and other wastes from the steelmaking process. On April 1, 1996, ISSI and SCP entered into an Acid Regeneration Plant Supply and Installation Agreement ("Agreement I"), in which ISSI was to, *inter alia,* build a plant for SCP. On April 15, 1997, the parties entered into an Iron Oxide Sales Agreement ("Agreement II"), in which ISSI agreed to buy iron oxide produced by the plant that was the subject of Agreement I.

A dispute arose over Agreement II. Agreement II provides:

> The validity, performance and enforcement of this Contract shall be governed by Philippine Laws. The parties agree that any dispute or claim arising out of this Contract shall be settled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce. The proceedings on arbitration shall be conducted in Singapore. The arbitral award shall be final and binding on both parties.

(Docket No. 1). SCP filed a Request for Arbitration on May 5, 2003. On June 24, 2004, the arbitrator issued an order in favor of SCP and requiring ISSI to pay a sum of money to SCP in accordance with the award. (Docket No. 1, pp. 12-45).

On January 19, 2006, SCP filed a Petition to Confirm Foreign Arbitration Award in the Court of Common Pleas of York County, Pennsylvania. (Docket No. 1). On March 10, 2006, ISSI filed a Notice of Removal in the United States District Court for

the Middle District of Pennsylvania. On March 17, 2006, the case was transferred to the Western District of Pennsylvania. (Docket No. 11).   Pending is a Motion for Judgment on the Pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 14).

## II. ANALYSIS

### A. Legal Standard

The same standard of review applies to Motions brought pursuant to Rule 12(c) as it does to Motions brought pursuant to Rule 12(b)(b). *Turbe v. Government of Virgin Isl.,* 938 F.2d 427, 428 (3d Cir. 1991). In deciding this motion, I must accept all the factual allegations as true, and must view the complaint in a light most favorable to the plaintiff. *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 664-65 (3d Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). I may dismiss the petition only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Haynes v. Metropolitan Life Ins. Co.,* 94 Fed.Appx. 956 (3d Cir. 2004). In other words, "[u]nder Rule 12(c), a court must 'view the facts in the pleadings in the light most favorable to the plaintiff and must grant the motion only if the moving party establishes that no material issue of fact remains and that it is entitled to judgment as a matter of law.'" *Citisteel USA, Inc. v. General Elec. Co.,* 78 Fed.Appx. 832, *3 (3d Cir. 2003), *quoting  Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n. 4 (3d Cir.1986). With this standard in mind, I now turn to the issues of the case.

**B.    The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517**

SCP seeks a confirmation of a foreign award. (Docket No. 1). As such, this case arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("the Convention"), 21 U.S.T. 2517. 9 U.S.C. §201, *et seq.* "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for the refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. §207. Article V of the Convention sets forth the grounds for refusing to recognize or enforce an arbitral award. 21 U.S.T. 2517, Art. V.

ISSI had filed a Motion for Judgment on the Pleadings arguing that the foreign arbitral award in this case should not be confirmed based on three reasons set forth in Article V of the Convention. (Docket No. 14). The first reason specified by ISSI is that the award has not yet become binding on the parties. *Id.* The second reason is that the recognition or enforcement of the award would be contrary to public policy. *Id.* The third reason raised by ISSI is that the composition of the arbitral authority was not in accordance with the agreement of the parties. *Id.* SCP disagrees with ISSI arguing that the award is final and binding, the award is not contrary to public policy, and that the arbitrator was selected in accordance with the agreement of the parties. (Docket No. 19). I will address each argument in turn.

### 1. **Article V(1)(e): Binding On The Parties**

ISSI argues that this Court should refuse to recognize the arbitral award, pursuant to Article V(1)(e) of the Convention, because it has filed a petition to vacate the award. (Docket No. 14). Article V(1)(e) provides as follows:

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> \*          \*          \*
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

21 U.S.T. 2517, Art. V(1)(e). Thus, pursuant to the Convention, applications for setting aside or suspending an arbitral award may be made only to a "competent authority of the country in which, or under the law of which, that award was made." *Id.* A country with "competent authority" is referred to as a country with primary jurisdiction.

ISSI argues that it filed a Petition to Vacate the arbitral award on August 18, 2004, in the Republic of the Philippines at Civil Case No. 04-957,[1] and therefore, the

---

[1] SCP filed a Motion to Dismiss the Petition to Vacate in the Republic of the Philippines case. The Motion to Dismiss the Petition to Vacate was denied, although SCP argues that it was ever served a copy of said order. SCP never filed an Answer to the Petition and, on January 4, 2006, SCP was held to be in default. On January 26, 2006, SCP filed an Urgent Motion for Reconsideration. To date the default has not been set aside and the court in the Philippines has yet to rule on the Petition to Vacate.

5

arbitral award is not yet binding. In opposition, SCP argues that the award has become binding on the parties by the terms of the contract and the by fact that ISSI did not appeal the arbitral award in Singapore, the country in which, and under the laws of which, that award was made. (Docket No. 20, pp. 5-10). I agree with SCP.

Clearly, Singapore was the country in which the award was made. Therefore, I focus next on the phrase "under the law of which." The phrase "under the law of which" has been held to refer "exclusively to procedural and not substantive law, and more precisely, to the regimen or scheme of arbitral procedural law under which the arbitration was conducted, and not the substantive law of contract." *M & C Corp. v. Erwin Behr GmbH & Co.,* 87 F.3d 884 (6th Cir. 1996), *quoting International Stand. Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial,* 745 F.Supp. 172, 178 (S.D. N.Y. 1990); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274, 287 (5th Cir. 2004); *See also, American Construction Machinery & Equip. Corp. v. Mechanised Construction of Pakistan Ltd.,* 659 F.Supp. 426 (S.D. N.Y. 1987), *aff'd,* 828 F.2d 117 (2d Cir. 1987), *cert. denied,* 484 U.S. 1064 (1988). In *International Stand.*, the court recognized that the term "competent authority"

> is virtually always the court of the country in which the award was made. The phrase' or under the law of which' the award was made refers to the theoretical case that on the basis of an agreement of the parties the award is governed by an arbitration law which is different from the arbitration law of the country in which the award was made. A. Van den Berg, the New York Arbitration Convention of 1958 350 (Kluwer 1981). The view is consistent with a commentary on the circumstances under which the Soviet delegate offered the amendment

> embracing the language in issue.  *See,* United Nations Conference on International Commercial Arbitration, Summary Record of the 23rd Meeting, 9 June 1958, E/CONF. 26/SR.23 at 12 (12 Sept. 1958), reprinted in G. Gaja, International Commercial Arbitration: New York Convention III C.213 (Oceana Pub. 1978).

745 F.Supp. at 177.  I find this analysis persuasive.

In this case, Singapore was the situs of the arbitration.  There is no specific language in the contract to indicate the parties selected the procedural laws of any particular country.  ISSI argues, however, that the arbitration clause contained in Agreement II specified that: "The validity, performance, and **enforcement** of this Contract shall be governed by Philippine laws."  (Docket No. 23, p. 5)(emphasis in original).  This language, however, does not specifically state that the arbitrator should have applied Philippine procedural law.  *See, Kahara Bodas,* 264 F.Supp.2d at 481-82 (While it would be rare for the parties to choose a procedural law different from the arbitral situs, if they do, the selections must be clear); *The Enforcement and Annulment of International Arbitration Awards in Indonesia*, Noah Rubins, 20 Am.U. Int'l L. Rev. 359, 391 (2005).  Therefore, I am not persuaded by this argument.  Thus, by implication, Singapore procedural law applied.  *See, Karaha Bodas Co.,* 364 F.3d at 309-310.  Therefore, Singapore is the only country with primary jurisdiction capable of vacating the award.  *See, The Enforcement and Annulment of International Arbitration Awards in Indonesia*, Noah Rubins, 20 Am.U. Int'l L. Rev. 359, 391 (2005).

Because Singapore is the only country that has primary jurisdiction in this case, the court in the Republic of the Philippines may not properly vacate the

award.  ISSI argues in its Reply, however, that the Republic of the Philippine court already considered the issue of jurisdiction raised now by SCP and determined that it has jurisdiction to vacate the award.  (Docket No. 23).  Based on my research as set forth above, I find this determination of the Philippine court to be flawed.  As discussed, it would be improper under the Convention for the Philippine court to vacate the arbitral award because it is not a country with primary jurisdiction.  According to the Convention, the Republic of the Philippine court, a country with secondary jurisdiction, may not vacate the award.  21 U.S.T. 2517, Art. V(1)(e).  Thus, any ruling by the Republic of the Philippine court otherwise, would have no effect on this Court and would not present a barrier to recognition and enforcement of the arbitral award.  *Id.*  Consequently, I find that ISSI's first argument lacks merit.

### 2. Article V(2)(b): Public Policy

Pursuant to the Convention, recognition and enforcement of an arbitral award may be refused if the recognition and enforcement of the arbitral award would be contrary to the public policy of the country where recognition and enforcement is sought.  21 U.S.T. 2517, Article V(2)(b).  "The public policy defense under Article V(2)(b) of the Convention is an extremely narrow one, which pertains only when 'enforcement would violate the forum state's most basic notions of morality and justice.'... An expansive construction of this defense would vitiate the Convention's basic effort to remove preexisting obstacles to enforcement." *Coutinho Caro & Co., U.S.A., Inc. v. Marcus Trading, Inc.,* Nos. 3:95CV2362 AWT, 3:96CV2218 AWT, 3:96CV2219 AWT, 2000 WL 435566, *12 (D. Conn. March 14, 2000),

*quoting Parsons & Whittomore Overseas Co. v. Societe Generale De L'Industrie Du Papier,* 508 F.2d 969, 974 (2d Cir. 1974).

ISSI summarily argues that the foreign award is contrary to public policy because it is the result of improper forum shopping and is "akin to the doctrine of *res judicata*." (Docket No. 15, pp. 6-7). ISSI also seems to be arguing that the foreign award is contrary to public policy because there "is currently in litigation in another nation." ( Docket No. 14, p. 3, ¶13).   Without more, these  arguments are wholly underdeveloped and inadequate. Nonetheless, for completeness sake, as I discussed above, any award arising from the litigation currently pending in the Philippines will have no bearing on the recognition and enforcement of the arbitral award resulting from Agreement II.  Thus, this argument has no merit.

Furthermore, I note that there is no dispute that Agreement I and Agreement II are separate contracts.  Obviously, therefore, any disagreement arising under them may be filed separately and potentially in different forums, as was the case here.  According to the contract language, SCP filed a claim regarding Agreement II and the dispute was arbitrated in Singapore. This is not improper forum shopping. Consequently, I do not find merit to ISSI's argument that the recognition and enforcement of the foreign award at issue is contrary to public policy.

### 3. **Article V(1)(d): Composition of the Arbitral Authority**

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, Article V(1)(d), recognition and enforcement of the arbitral award may be refused where the "composition of the arbitral authority or

9

the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement , was not in accordance with the law of the country where the arbitration took place." ISSI argues that the arbitrator was not familiar with and did not properly apply Philippine laws.  (Docket No. 15, p. 8).  As support for this theory, ISSI points to the joint affidavit of Gregorio F. Frenandez and Benigno G. Par, Jr.  (Docket No. 14-2, ¶¶24-25).  Therein, Mr. Fernandez and Mr. Par simply conclude as follows:

> 24. Defendant ISSI was denied due process before the International Chamber of Commerce, International Court of Arbitration, as the arbitrator appointed to hear the matter was not familiar with, and did not properly apply Philippine law.  Moreover, the arbitrator failed to state the law and jurisprudence on which the award was based.
>
> 25. The composition of the arbitral panel was not in accordance with the agreement of the parties, as the arbitrator appointed by the International Chamber of Commerce, International Court of Arbitration was not familiar with, and did not apply, Philippines law.

ISSI does not provide anything further to support these bald allegations.  Without more, a motion for judgment on the pleadings is not warranted.  *See, Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir.2005); *Mandonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir. 1985).

*************************

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEEL CORPORATION OF THE PHILLIPINES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  06-386 |
| INTERNATIONAL STEEL SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND now, this **31st** day of July, 2006, after careful consideration of Defendant's Motion for Judgment on the Pleadings (Docket No. 14), it is ordered that said Motion (Docket No. 14) is denied.

A conference is scheduled before this Court on Monday, August 28, 2006 at 9:45 A.M., on the Third Floor, Suite 3280 of the U.S. Post Office & Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania, to discuss the discovery necessary in this case.  Counsel shall have settlement authority and parties should be available by telephone.

BY THE COURT:


/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge