IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEEL CORPORATION OF THE PHILIPPINES, | )<br>)<br>) |
| Plaintiff/Petitioner, | )<br>) Civil Action No. 06-386 |
| vs. | )<br>) |
| INTERNATIONAL STEEL SERVICES, INC., | )<br>) |
| Defendant/Respondent. | |

AMBROSE, Chief District Judge

**OPINION AND
ORDER OF THE COURT**

**Synopsis**

Plaintiff/Petitioner Steel Corporation of the Philippines ("SCP") commenced this action by petition to confirm a foreign arbitration award rendered in favor of SCP against Defendant/Respondent International Steel Services, Inc. ("ISSI"). By opinion and order, dated July 31, 2006 [Docket No. 27], I denied Defendant's motion for judgment on the pleadings. ISSI now has moved for summary judgment [Docket No. 47] dismissing the petition on essentially the same grounds, i.e., that the award: (1) has been set aside or "nullified" by the Philippine Regional Trial Court; (2) violates the United States' public policy against forum shopping; and (3) was not rendered in compliance with the parties' arbitration agreement and violates due process. SCP cross-moves for summary judgment [Docket No. 49] and opposes ISSI's motion [Docket No. 56]. After careful consideration of the papers submitted by the parties, and for the reasons set forth below, I deny ISSI's motion for summary judgment and grant SCP's motion for summary judgment confirming the arbitration award.

1

**OPINION**

**I. Relevant Undisputed Facts**[1]

SCP is a producer and wholesaler of steel products in the Philippines. ISSI is in the business of designing and constructing acid regeneration plants, which generate and recycle pickle liquor and other wastes from the steelmaking process. On April 1, 1996, ISSI and SCP entered into an Acid Regeneration Plant Supply and Installation Agreement (the "ARP Contract"), in which ISSI was to, *inter alia*, build a plant for SCP. On April 15, 1997, the parties entered into an Iron Oxide Sales Agreement (the "IOSA Contract"), in which ISSI agreed to buy iron oxide produced by the plant that was the subject of the ARP Contract.

Both the ARP Contract and the IOSA Contract contain identical arbitration clauses. The clauses provide as follows:

> The validity, performance and enforcement of this Contract shall be governed by Philippine Laws. The parties agree that any dispute or claim arising out of this Contract shall be settled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce. The proceedings on arbitration shall be conducted in Singapore. The arbitral award shall be final and binding on both parties.

[Docket No. 50-5, at Art. 10.]

Separate disputes arose under the two contracts. On September 18, 2002, ISSI commenced an arbitration against SCP under the ARP contract. Because the dispute was essentially a construction dispute, ISSI sought arbitration before the Construction Industry Arbitration Commission ("CIAC") of the Philippines, despite the terms of the arbitration provision in the ARP Contract. An award was rendered on August 20, 2003 in favor of ISSI in the

---

[1] Neither party submitted the exhibits annexed to the Joint Affidavit [Docket No. 12], previously submitted in connection with ISSI's motion for judgment on the pleadings. This Court's rules expressly prohibit incorporation by reference. However, since the Joint Affidavit, without exhibits, was submitted by SCP [Docket No. 50-3], I will consider those exhibits part of the record on summary judgment. References to those exhibits are indicated by "Joint Aff., Ex. __."

2

amount of $150,000 (the "Philippine Award"). [Docket No. 50-9, at 3.]

A second dispute arose between the parties with respect to purchases of iron oxide from SCP's plant pursuant to the IOSA Contract. On May 5, 2003, SCP submitted the dispute to arbitration in Singapore before the ICC International Court of Arbitration. ISSI participated fully in the arbitration proceeding, which was held in January and February 2004.

The arbitrator, Mr. Woo Tchi Chu, issued an award on liability in SCP's favor on June 24, 2004 [Docket No. 50-6] and a final award on November 3, 2004 [Docket No. 50-4] in the amount of $647,965.50 including interest, costs and expenses (collectively, the "Singapore Award"). The Singapore Award clearly states that the arbitrator applied the Singapore International Arbitration Act to the proceedings, but applied Philippines law to the validity, performance and enforcement of the ARP Contract. [Docket No. 50-4, at 7.]

On August 19, 2004, ISSI filed a petition in a Regional Trial Court of the Philippines to vacate the Singapore Award. Joint Aff., Ex. A. SCP moved to dismiss the petition, which was denied by order dated December 14, 2004. Id., at Ex. D. By order dated January 4, 2006, SCP was declared in default of the petition by the Regional Trial Court and ISSI was "allowed to present its evidence ex-parte." Id., at Ex. G. On January 26, 2006, SCP filed an Urgent Motion for Reconsideration of the Regional Trial Court's January 4th order on default. Id., at Ex. H. The Regional Trial Court permitted ISSI to file a response thereto, and the issue now has been fully submitted. By order dated April 18, 2007, the Regional Trial Court referred the dispute to mediation, and stayed all further proceedings of the court pending mediation. [Docket No. 59-3.] According to SCP, the parties failed to reach resolution through mediation, the Regional Trial Court's stay is no longer in effect, and the merits of ISSI's petition are before the Regional Trial Court for disposition. (SCP Reply Mem. at 3.)

Meanwhile, on September 13, 2005, ISSI filed with the CIAC a motion for execution of

the Philippine Award, which motion was granted by the CIAC by undated order. By order dated September 30, 2005, the CIAC denied SCP's motion for reconsideration and on October 4, 2005, a writ of execution was issued with respect to the Philippine Award. [Docket No. 50-9, at 1-2.] The issuance of the writ was appealed by SCP to the Philippine Court of Appeals.

On appeal, SCP argued that ISSI was not entitled to a writ of execution because the monetary award in its favor (the Philippine Award) was extinguished as a matter of law by the greater award in SCP's favor (the Singapore Award). The Court of Appeals agreed. By decision and order dated July 17, 2007, the Philippine Court of Appeals reversed, set aside and lifted the CIAC's writ of execution against SCP in connection with the Philippine Award. [Docket No. 50-9, at 12.] In so holding, the Court of Appeals explicitly rejected ISSI's argument that the Singapore Award was not due and payable given ISSI's petition to vacate the award filed in the Philippines. Id. at 8-9. The Court of Appeals rejected the argument for a multitude of reasons, including that (1) the IOSA Contract provided that arbitral awards are final and binding on the parties, and such a provision "carries with it a waiver of the right to have it nullified before our local courts"; (2) the petition to vacate is a "prohibited recourse" under Art. 34, of the Model Law, which defines the sole grounds upon which an arbitrator's award may be vacated; and (3) only Singapore, as the country with primary jurisdiction, can annul the award. Id. at 8-12.

## II. Standard for Summary Judgment

In order to prevail on a motion for summary judgment, the moving party must demonstrate that "there is no genuine issue of material fact and. . .the moving party is entitled to judgment as a matter of law." Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 2007 WL 2153278, at *1 (3d Cir. July 27, 2007) (quoting Fed.R.Civ.P. 56©). "To defeat a motion for summary judgment, the non-moving party must 'do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party

4

must come forward with specific facts showing that there is a genuine issue for trial.' " Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

### III. SCP's and ISSI's Motions for Summary Judgment

SCP has moved for summary judgment on its petition to confirm the Singapore Award. Confirmation by United States courts of foreign arbitration awards is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, codified in 9 U.S.C. § 201 *et seq.* As the Supreme Court has explained: "the principal purpose for acceding to the Convention was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries." Admart AG v. Stephen and Mary Birch Found., Inc., 457 F.3d 302, 307 (3d Cir. 2006) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974)). "Consistent with the policy of favoring enforcement of foreign arbitral awards, parties have limited defenses to recognition and enforcement of an award as set out in Article V of the Convention." Id. "Under the Convention, a district court's role is limited - it must confirm the award unless one of the grounds for refusal specified in the Convention applies to the underlying award." Id.; 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.")

Accordingly, unless ISSI can raise a material issue of fact with respect to one of the defenses set forth in the Convention, SCP is entitled to summary judgment.

Article V of the Convention sets forth the bases upon which a court may deny enforcement of a foreign arbitration award. They are:

> (a) the parties to the arbitration agreement were under some incapacity, or the arbitration agreement was not valid under the law chosen by the parties or under the law of the country where the award was made;

5

> (b) the party against whom the award was rendered did not receive proper notice of the appointment of the arbitrator, the arbitration proceedings, or was otherwise unable to present its case;
>
> (c) the award falls outside the scope of the arbitration agreement and submission;
>
> (d) the composition of the arbitral authority or the arbitration proceeding was not in accordance with the parties' agreement or the law of the country where the arbitration took place; and
>
> (e) the award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

9 U.S.C. § 201, Art. V(1). In addition, a court may refuse to enforce an arbitration award where its subject matter is not capable of settlement by arbitration under the law of the forum country, or where recognition or enforcement of the award would violate public policy of the forum country. "To carry out the policy favoring enforcement of foreign arbitral awards, courts have strictly applied the Article V defenses and generally view them narrowly. Admart AG, 457 F.3d at 308.

ISSI, in moving for summary judgment dismissing the petition, relies principally on subpart (e) and the public policy exception. With respect to subpart (e), ISSI argues that the Singapore Award has been nullified by the default judgment entered against SCP by the Philippine Regional Trial Court, or at the very least, is under review and therefore has not become final and binding. ISSI also argues that SCP's attempts to enforce the Singapore Award in this Court violate the U.S. public policy against forum shopping. These arguments were raised by ISSI in its Rule 12(c) motion for judgment on the pleadings and were rejected by this Court in my Opinion and Order, filed July 31, 2006 (the "Prior Opinion"). Nevertheless, in light of the different standard on summary judgment, I will re-address each argument, with reference to my Prior Opinion, where applicable.

**A. The Status of the Singapore Award**

6

This argument was raised by ISSI in its previous Rule 12(c) and rejected in my Prior Opinion.

I note initially that the order of the Philippine Regional Trial Court (Joint Aff., Ex. E), contrary to ISSI's characterization, neither sets aside nor vacates the Singapore Award, but rather permits ISSI to present its evidence ex-parte. This interpretation is consistent with the subsequent proceedings before the Philippine Regional Trial Court referring the dispute to mediation and now taking the dispute under submission. Hence, I find no support in the record for ISSI's argument that the Philippine Regional Trial Court has set aside the Singapore Award.

Notwithstanding the scope of the Regional Trial Court's order, ISSI's argument lacks merit. As I explained in my Prior Order, "applications for setting aside or suspending an arbitral award may be made only to a competent authority of the country in which, or under the law of which, that award was made." Prior Order, at 5. The situs of the arbitration was Singapore, and the phrase 'under the law of which' has been interpreted to refer exclusively to procedural and not substantive law, and more precisely, to the regimen or scheme of arbitral procedural law under which the arbitration was conducted, and not the substantive law of contract." Id. at 6 (citing M&C Corp. v. Erwin Behr GmbH & Co., 87 F.3d 884 (6th Cir. 1996)). "A country with 'competent authority is referred to as a country with primary jurisdiction." Id. In my Prior Order, I held that Singapore, as the country in which the award was made and whose procedural law applied to the arbitration, is the only country with primary jurisdiction to set aside or vacate the award. Id. at 7. Accordingly, the court in the Republic of the Philippines had no jurisdiction to vacate the Singapore Award. Id.

The arbitration clause's statement that the "enforcement" of the contract will be governed by Philippine law, without more, does not sufficiently reflect an agreement between the parties that Philippine procedural law should apply to an arbitration to be held in Singapore.

7

As the Fifth Circuit has explained:

> Under the New York Convention, an agreement specifying the place of the arbitration creates a presumption that the procedural law of that place applies to the arbitration. Authorities on international arbitration describe an agreement providing that one country will be the site of the arbitration but the proceedings will be held under the arbitration law of another country by terms such as 'exceptional'; 'almost unknown'; a 'purely academic invention'; 'almost never used in practice'; a possibility 'more theoretical than real'; and a 'once-in-a-blue-moon set of circumstances." Commentators note that such an agreement would be complex, inconvenient, and inconsistent with the selection of a neutral forum as the arbitral forum.

Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 291 (5th Cir.)(holding that references in contract to certain Indonesian civil procedure rules "fall far short of an express designation of Indonesian procedural law necessary to rebut the strong presumption that designating the place of the arbitration also designates the law under which the award is made"), cert. denied, 543 U.S. 917 (2004).

ISSI has submitted no evidence in support of its motion for summary judgment that warrants altering my Prior Holding. The excerpted deposition testimony of Messrs. Abeto Uy and Manuel Pamaran, annexed to ISSI's motion as Exhibits A and B, is inapposite. Neither individual testified that under the IOSA contract, Philippine procedural law was intended to apply to the arbitration.

Moreover, my Prior Opinion is reinforced by the recent opinion of the Court of Appeals of the Republic of the Philippines in a related proceeding. See Docket No. 50-9. Therein, ISSI sought to execute on the arbitration award it had won against SCP in their construction dispute under the ARP Agreement. However, the Court of Appeals refused to enforce the writs of execution issued by the CIAC, finding that the Philippine Award had been extinguished by the greater amount of the Singapore Award in favor of SCP. The Court of Appeals expressly rejected ISSI's argument that the Singapore Award had been vacated, and thus should not be considered in determining whether the Philippine Award had been satisfied. Citing authority

8

that "[o]nly a country with primary jurisdiction over an arbitral award may annul that award," the Court of Appeals held:

> Thus, not only are Philippine courts to accord respect and recognition to the foreign award because an action to set aside an award can be brought only under the domestic law of the arbitral forum, i.e. Singapore[.]  Our local courts under both local and international law, do not have jurisdiction to set aside a foreign arbitral award.

Docket No. 50-9, at 11.

Finally, even if the Singapore Award were under review or had been vacated by the Philippine Regional Trial Court, this Court would still be entitled in its discretion to confirm the Singapore Award.  See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 369 (3d Cir. 2003) ("As an enforcement jurisdiction, our courts have discretion under the Convention to enforce an award despite annulment in another country, and have exercised that discretion in the past.")

Since no court of primary jurisdiction has vacated the Singapore Award, I find that Defendant has failed to meet its burden of demonstrating that the Singapore Award is a "nullity" and should not be enforced.

### B.  Public Policy Arguments

ISSI argues that SCP engaged in forum shopping by (1) commencing the arbitration in Singapore rather than the Philippines and (2) seeking to enforce the Singapore Award in the United States rather than the Philippines.  Once again, ISSI has rehashed the arguments it presented in its unsuccessful motion for judgment on the pleadings.  For the reasons set forth below and in my Prior Opinion, I again reject Defendant's arguments.

The IOSA Agreement clearly provides that any disputes arising under the IOSA Agreement are subject to arbitration in Singapore.  Notwithstanding SCP's consent to arbitration before the CIAC of a separate dispute arising from the ARP Contract - a construction

9

contract-, SCP was entirely within its rights to commence this arbitration in Singapore, as expressly provided for in the IOSA Agreement. Choosing to utilize the forum contractually agreed upon by the parties is not forum shopping and, indeed, is supported by public policy. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) (forum selection clauses in international commercial agreements are presumptively valid); The Hope Cancer Treatment Fund, Inc. v. Mountaineer Park, Inc., 2007 WL 184820, at *1 (W.D. Pa. Jan. 19, 2007) (dismissing action based on contractual forum selection clause).

### C. ISSI's Remaining Arguments

ISSI raises several other grounds upon which this Court should refuse to confirm the Singapore Award, set forth in its attorneys' Joint Affidavit at paragraphs 24-29. However, the conclusory assertions set forth in the Joint Affidavit are insufficient as a matter of law to support or defeat a motion for summary judgment. See Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985) ("An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden."); Patton v. Doran, 2006 WL 485236, at *4 (M.D. Pa. Feb. 28, 2006) ("Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.")

## V. Conclusion

The defenses to enforcement of the Singapore Award relied upon by ISSI are unsupported by law or evidence. Accordingly, I grant Petitioner SCP's motion for summary judgment enforcing the Singapore Award, and deny Respondent ISSI's motion in its entirety.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEEL CORPORATION OF THE PHILIPPINES, | )<br>)<br>) |
| Plaintiff/Petitioner, | )<br>) Civil Action No. 06-386 |
| vs. | )<br>) |
| INTERNATIONAL STEEL SERVICES, INC., | )<br>) |
| Defendant/Respondent. | |

AMBROSE, Chief District Judge

## ORDER OF THE COURT

AND now, this 6th day of February, 2008, after careful consideration of Petitioner's Motion for Summary Judgment [Docket No. 49] and Respondent's Motion for Summary Judgment [Docket No. 46], it is **hereby**

**ORDERED** that Petitioner's Motion is granted in the amount of $647,965.50; and it is further

**ORDERED** that Respondent's Motion is denied in its entirety.

The Clerk of the Court is hereby directed to mark this case "CLOSED."

BY THE COURT:

/s/ Donetta W. Ambrose

Donetta W. Ambrose,
Chief U.S. District Judge